IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>     vs.<br><br>WILLIE L. HILL,<br><br>                      Defendant. | 8:20CR205<br><br><br>FINDINGS AND<br>RECOMMENDATION |

       This matter is before the Court on the Defendant's Motion to Suppress Physical Evidence and Statements, Request for Evidentiary Hearing and Oral Argument (Filing No. 16) filed by Defendant, Willie L. Hill. Defendant filed a brief (Filing No. 17) supporting his motion and the government filed a brief (Filing No. 22) in opposition.

       The Court held an evidentiary hearing on the motion on September 29, 2020. Defendant was present with his attorney, Jeffrey Thomas. The government was represented by Assistant United States Attorney, Christopher Ferretti. Detective Chad Wiebers ("Det. Wiebers") and Sergeant Tyler Stricker ("Sgt. Stricker"), both with the City of Omaha Police Department ("OPD"), testified for the government. The Court received into evidence Exhibits 1-2 offered by the government and Exhibits 101-106 offered by Defendant, without objection. A transcript (TR.) of the hearing was filed on November 6, 2020. (Filing No. 28). The matter is now fully submitted to the Court. For the reasons set forth below, the undersigned magistrate judge recommends that Defendant's motion be denied.

## BACKGROUND

       On March 1, 2020, Det. Wiebers was working with the Gang Unit of the OPD when he received information from a confidential informant ("CI") that a fugitive with an active warrant, Monica Gonzalez, had rented room number 214 at the Rodeway Inn hotel on 78th Street and Dodge Street, and that the room's occupants were dealing drugs. The CI reported observing at least three firearms in the room but believed there could be more. The CI further provided information that Gonzalez was there with her boyfriend, Terrence Horton (a white male), who had a criminal record of drug possession and thefts, and according to other confidential sources, was also dealing drugs. Finally, the CI told Det. Wiebers that a black male with a handgun was also with Gonzalez. Det.

Wiebers testified that he had arrested Gonzalez on several prior occasions for various drug offenses and knew her to be in relationships with prominent drug dealers, including armed drug dealers. Det. Wiebers was familiar with the CI who provided the information about Gonzalez because Det. Wiebers had made several firearm and drug arrests based upon information supplied by the CI in the past. (TR. 10-13, 21, 32). Det. Wiebers shared the CI's information with Sgt. Stricker. (TR. 43-44).

Shortly after receiving the CI's information, at approximately 10:00 p.m., Sgt. Stricker, Det. Wiebers, Det. Koenig, and two other detectives set up surveillance in the parking lot at the Rodeway Inn. (TR. 10, 43). Although it was dark outside, Det. Wiebers testified the hotel was very well-lit with brand-new LED lights due to frequent criminal activity there. (TR. 36). As explained by Det. Wiebers, and reflected by the photographs provided in exhibits 101-106, the hotel is two levels with an outdoor balcony-style corridor such that each room's door is visible from the parking lot. From Det. Wiebers' position in the parking lot, he could clearly see the front door of room 214 and its neighboring room, 212, which both faced north on the L-shaped building. (TR. 11-12, 27-29). Det. Wiebers observed Gonzalez and Horton enter room 214. Det. Wiebers did not see Gonzalez exit the room at any point. Det. Wiebers also observed three other individuals, one female and two males, including Horton, coming and going from room 214. Det. Wiebers observed one of those individuals, a black male later identified as Defendant, exit room 214 and enter the neighboring room, room 212, on two occasions. Det. Wiebers also observed individuals, including Defendant and Horton, exit room 214 and go down a stairwell to a vehicle before going back upstairs. (TR. 14-15). Det. Wiebers testified that, based upon the movement and activities of the individuals, it looked as if drug deals were taking place. (TR. 15-16). Sgt. Stricker could not see the hotel room doors from his position on the east side of the building, but the information about the individuals and activity at rooms 212 and 214 was communicated to him on his radio. (TR. 44-45, 48).

After surveilling the scene for approximately twenty minutes, officers decided to execute a "takedown strategy" to arrest Gonzalez. Sgt. Stricker and Det. Koenig began setting up on the east side of the building at the bottom of the stairs. Det. Wiebers and his partner set up on the west side of the building at a second set of stairs. As officers were getting into position, three individuals, including Defendant and Horton, exited room 214 and began walking toward the stairs on the east side of the building where Sgt. Stricker was positioned. One of the individuals began

running back towards room 214 after seeing the officers but was detained by Det. Wiebers before the individual was able to reenter room 214. (TR. 16-19). Det. Koenig intercepted a white male at the bottom of the stairs and Sgt. Stricker intercepted Defendant on the second-floor balcony, approximately ten to fifteen feet from room 214. (TR. 47-48). Officers recovered a discarded bag of suspected narcotics in the stairwell, although officers were unsure who had discarded it. (TR. 18, 53). The undersigned reviewed Exhibit 1, the audio-visual recording from Det. Wiebers' body worn camera, and finds it is consistent with his testimony.

Sgt. Stricker activated his body worn camera after making contact with Defendant on the second-floor balcony. (TR. 54). Sgt. Stricker immediately handcuffed Defendant and began patting him down. Defendant was wearing a coat but kept repeating that it was not his coat. While Sgt. Stricker was patting down Defendant, Sgt. Stricker heard on his radio that another detective found a needle on his detained individual, so Sgt. Stricker asked Defendant if he had any needles. Defendant replied no. Sgt. Stricker then asked Defendant if he could check to make sure Defendant had nothing on him, and Defendant agreed. Sgt. Stricker then recovered a firearm from Defendant's coat pocket. (TR. 49-50). The undersigned reviewed Exhibit 2, the audio-visual recording from Sgt. Stricker's body worn camera, and finds it is consistent with his testimony.

Defendant was arrested for having a concealed weapon, and a subsequent data check revealed he was a convicted felon. (TR. 51-52). Defendant and Horton consented to searches of rooms 212 and 214 and officers recovered drug paraphernalia, drug packaging, a small amount of drugs, and three realistic-looking pellet guns. (TR. 22-23).

Defendant is charged in a one-count Indictment with being a felon in possession of a firearm. (Filing No. 1). Defendant moves the Court to suppress any evidence derived from the seizure and search of his person on March 1, 2020, as well as any statements he made during questioning after his arrest, solely arguing that such evidence is fruit of his unlawful detention by Sgt. Stricker unsupported by reasonable suspicion. (Filing No. 17; TR. 66-67).

## ANALYSIS

Defendant argues his seizure by Sgt. Stricker runs afoul of *Terry v. Ohio*, 392 U.S. 1 (1968). Specifically, Defendant argues that, although officers had a fugitive arrest warrant for Gonzalez, Sgt. Stricker had no specific or particularized suspicion of criminal activity with respect to Defendant beyond his proximity to Gonzalez. "For an investigative *Terry*-type seizure to be

constitutional under the Fourth Amendment, an officer must be aware of 'particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.'" *United States v. Donnelly*, 475 F.3d 946, 952 (8th Cir. 2007)(quoting *United States v. Martin*, 706 F.2d 263, 265 (8th Cir. 1983)). "A reviewing court must look at the totality of the circumstances, allowing 'officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *United States v. Davison*, 808 F.3d 325, 329 (8th Cir. 2015)(quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

The undersigned concludes Sgt. Stricker had individualized reasonable suspicion of criminal activity justifying Defendant's detention and frisk. Officers were provided with information from a reliable confidential informant that a fugitive was located in room 214 at the Rodeway Inn, that the room's occupants were dealing drugs, that the CI saw firearms in the room, and that the CI saw a black male with a handgun with the fugitive. Det. Wiebers had utilized this CI in the past and had made drug and firearm arrests based upon information supplied by the CI. A key portion of the CI's information was independently corroborated when Det. Wiebers observed the fugitive and her boyfriend entering the same hotel room identified by the CI. See *United States v. Hill*, 91 F.3d 1064, 1069 (8th Cir. 1996)(finding information provided by a confidential informant gave rise to reasonable suspicion when the informant's tip was based upon the informant's direct observations and was partly independently corroborated by officers); *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)(concluding informant's information may support a probable cause finding if the informant has a track record of providing reliable information or the information was corroborated by independent evidence).

Aside from the CI's information, Det. Wiebers was personally familiar with the fugitive, Gonzalez, having arrested her on prior occasions for various drug offenses. Det. Wiebers knew Gonzalez associated with prominent drug dealers and had been advised by the CI that she was at the hotel with a boyfriend who had a criminal record of drug possession and thefts. The Rodeway Inn was known by law enforcement to be the site of frequent criminal activity, and officers had begun their surveillance around ten at night. See *United States v. Robinson*, 670 F.3d 874, 876 (8th Cir. 2012)(factors such as the time of day or night and location of the suspect parties may support the reasonableness of an officer's decision to investigate). Det. Wiebers observed movements and activities of individuals coming and going between Gonzalez's room and the

neighboring room that suggested to him that drug deals were taking place. See *United States v. Robinson*, 670 F.3d 874, 876 (8th Cir. 2012)(quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)("[L]aw enforcement officers may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them.'")).

Defendant argues this case is akin to *Ybarra v. Illinois*, 444 U.S. 85 (1979), wherein the Supreme Court held that officers did not have probable cause to search a mere patron of a tavern while executing a warrant for the tavern and its bartender. Defendant suggests that, similar to *Ybarra*, his seizure was not justified merely because he was seen exiting Gonzalez's hotel room while officers were executing the fugitive arrest warrant. (Filing No. 17 at pp. 2-3). However, *Ybarra* is distinguishable for a number of reasons. Defendant was not simply an "unwitting tavern patron" like Ybarra, "whose reasons for being at the public tavern during the search probably were not connected to any illegal activity taking place at the tavern." See *United States v. Cowan*, 674 F.3d 947, 954 (8th Cir. 2012)(concluding that, unlike a patron at a public tavern, the defendant's presence at an apartment during the execution of a search warrant for drug trafficking activity suggests the defendant was "in a common drug trafficking enterprise with the apartment's occupants," when combined with the defendant's statement he was from the reputed source city of the drugs and when another individual began running when officers entered). Instead, the information known by Sgt. Stricker suggested Defendant himself was involved in criminal activity and armed. Before officers arrived at the Rodeway Inn, Det. Wiebers had relayed the reliable CI's information to Sgt. Stricker, including that firearms were present in room 214 and that the CI had seen the fugitive with a black male in possession of a handgun. Det. Wiebers had also communicated his observations about the individuals' movements between rooms 212 and 214, and the eastern stairwell to Sgt. Stricker over the radio. Sgt. Stricker encountered Defendant shortly after Defendant exited room 214. Defendant was the only black male observed by officers entering or exiting room 214, and Sgt. Stricker knew that a black male with Gonzalez was armed. One of the individuals that had exited room 214 with Defendant began to flee from officers as soon as he saw them. Given the information known to Sgt. Stricker as outlined above, it was reasonable for him to infer that Defendant was involved in the criminal activity in room 214 and may be armed. Under the circumstances, the undersigned concludes Sgt. Stricker had reasonable suspicion to detain and frisk Defendant.

Defendant only challenges the constitutionality of his initial detention by Sgt. Stricker. Having found that detention was supported by reasonable suspicion, any evidence and statements obtained as a result of that detention do not need to be suppressed. Upon consideration,

**IT IS HEREBY RECOMMENDED** to Brian C. Buescher, United States District Court Judge, that Defendant's Motion to Suppress Physical Evidence and Statements, Request for Evidentiary Hearing and Oral Argument ([Filing No. 16](#)) be denied.

Dated this 16th day of November, 2020.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge

**ADMONITION**

Pursuant to NECrimR [59.2](#), any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.